WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v. JACKSONVILLE TERMINAL CO.

Civil Action No. 613–J.

District Court, S. D. Florida, Jacksonville Division.

May 6, 1944.

Douglas B. Maggs and Archibald Cox, both of Washington, D. C., and George A. Downing and Dakyns B. Stover, both of Atlanta, Ga., for plaintiff.

Charles Cook Howell, Elliott Adams, and Harold B. Wahl, all of Jacksonville, Fla., for defendant.

De VANE, District Judge.

### Findings of Fact.

1. Defendant, Jacksonville Terminal Company, is a common carrier by railroad in interstate commerce. It operates a terminal at Jacksonville, Florida, where it furnishes the customary and usual terminal facilities to four main line railroads. These railroads are regularly engaged in the interstate transportation of passengers and freight, and the terminal is one of the places in, out and through which their trains pass in the course of delivering passengers and freight in interstate commerce.

2. Upon entering the terminal property of the defendant, every main line train becomes subject to the jurisdiction and authority of the defendant. Defendant's engine and switching service crews take over the moment the main line trains come to a stop in the station; they then break down incoming interstate trains and make up new ones therefrom for further movement in interstate commerce; and they perform all the other work incident to the conduct of an ordinary interstate railroad terminal business. An average of 100 trains are handled and serviced by defendant through its crews each day.

3. The employees engaged in performing these terminal services consist of conductors or foremen, engineers, firemen, switchmen, hostlers and hostler's helpers. A full crew in switching service consists of a conductor or foreman, two switchmen, engineer and fireman, and in road engine movement, of a hostler and hostler helper. Under defendant's labor agreement, defendant is required to, and does at all times, provide a full crew for the performance of these services.

4. It is the practice of the defendant, as of railroads generally, to require that all applicants for employment in engine and switching service qualify for such service by first undergoing a training period to learn the duties and activities of the position they seek, during which training period no compensation is paid to such trainees.

5. The trainee is assigned to work with a full crew for the purpose of receiving instructions to qualify him for employment. He learns first by observation and by performing the manual or physical work which he will be required to do upon becoming a regular employee. This training is done under the supervision of the members of the crew, particularly the member of the crew performing the character of work in which the trainee is being instructed.

6. Trainees are assigned no regular time at which to report for training, or hours in which to carry out the training routine. The general practice is for the trainee to report at the beginning of a shift to a particular engineer or crew, exhibit his permit to receive instruction and receive his training. The trainee is free to select such time each day as best suits his convenience and frequently receives instructions after completing a day's work on some other job.

7. Trainees are also required to study the rules and regulations for the conduct and operation of defendant's terminal and facilities and to become familiar with the terminal, its makeup, signal and interlocking devices and the location of tracks and other facilities. It is necessary for the trainee to pass an examination concerning these matters before he is qualified to work as a regular employee. After evidencing his ability to do the work and passing the required examination, the trainee is placed upon defendant's payroll and thereafter becomes entitled to the full journeyman's contract wage of approximately $1 per hour as established by collective bargaining agreements between defendant and representatives of its workers.

8. While many of the trainees are experienced in railroad operation, due to the fact that it is necessary for them to study the rules and regulations for the conduct and operation of the terminal, to become familiar with the terminal, its makeup, signal and interlocking devices and the location of tracks and other facilities, it is necessary for all trainees to spend some time in the yard to enable them to pass the required examination before being put to work. The length of the training period depends entirely upon the aptitude, ability, prior experience and industry of the trainee himself. The defendant requires no set period. Some men qualify in a day; others require two weeks to become qualified and some, of course, never qualify. The average time required is about a week.

9. Defendant has never considered the trainee to be an employee until after the training period has been completed, trainee has qualified, and he has begun his first day's assignment. The trainee enters the yard upon the express understanding that he is not an employee and is not to be paid. Under defendant's practice, and under its labor agreements with its employees, the trainee does not go on the seniority list as an employee until after the training period has been completed, he has qualified, and begun his first day's assignment.

10. The training practice followed by defendant is one of long standing custom in the industry, and has been followed generally by terminals throughout the United States for many years. The trainees represent extra men over and above the normal complement of a crew, which is required despite the presence of the trainees.

11. The defendant made no application to the Administrator for the employment of the trainees as learners at sub-minimum rates, and the Administrator issued no authority to the defendant for the employment of the trainees at sub-minimum rates.

12. Defendant does not pay trainees during the training period the minimum wage provided by Sections 6(a) and 6(a)(4) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 206(a) nor does it maintain records as to these trainees of the kind required by Section 11(c) of the Act, 29 U.S.C.A. § 211(c), and the regulations of the Administrator issued thereunder.

## Conclusions of Law.

1. Defendant, Jacksonville Terminal Company, is subject to the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

2. It is not the purpose of the Fair Labor Standards Act to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law. If one has not hired another expressly, nor suffered or permitted him to work under circumstances where an obligation to pay him will be implied, they are not employer and employee under the Act.

3. None of the usual indicia of the employee relationship exist here as to the trainee. He is not subject to the rules of the defendant applicable to employees; no control is exercised over his time; he is not required to report at any specified time; defendant has no right to demand or require work from him; he comes and goes as he pleases; and both he and defendant understand and agree he is not to be paid during the training period.

4. There is nothing in the legislative history of the Fair Labor Standards Act to show congressional intent to cover the trainee under the Act. On the contrary, the legislative history shows that Congress intended a wage and hour law for the benefit of underpaid and overworked persons who are in fact employees, and did not intend the law to transform into employees persons who had never been and are not today such employees.

5. The trainee is not an employee under the commonly accepted meaning of the term, and despite the language "suffer or permit to work" in the Act, 29 U.S.C.A. § 203(g), he is not an employee thereunder. Congress referred to employment in the Act as the word is commonly used, as meaning physical or mental exertion controlled or required by the employer, and pursued necessarily or primarily for the employer and his business. The trainee here comes under the head of a student rather than an employee.

6. Only those employees of defendant who are a necessary part of carrying on its business in interstate commerce are covered by the Act.

Let an order be submitted in accordance with these findings and conclusions.