WALLING, Adm'r, Wage and Hour Division, U. S. Dept. of Labor, v. PORTLAND TERMINAL CO.

No. 230—Civil.

District Court, D. Maine, S. D.

June 18, 1945.

George W. Jansen, Supervising Atty., Office of Solicitor, Dept. of Labor, of Washington, D. C., and Harry A. Tuell, Dept. of Labor, of Boston, Mass., for plaintiff.

Leonard A. Pierce and Cook, Hutchinson, Pierce & Connell, all of Portland, Me., for defendant.

PETERS, District Judge.

In this action the plaintiff seeks to have the defendant enjoined from violating the sections of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., relating to the payment of minimum wages and the keeping of records. Sections 15(a) (2) and 15(a) (5).

The defendant denies the applicability of the statute in the situation disclosed. The principal question raised involves the employment status of certain applicants for positions who are being trained by the defendant preparatory to regular employment as trainmen, in case they qualify. If, on

the evidence, they should not be considered as employees, as the term is used in the Act, the plaintiff is not entitled to the injunctive relief asked for.

## Findings of Fact

The defendant is a common carrier by railroad employing yard crews in the operation of its terminal facilities at Portland. Applicants for such positions have to be taught how to do the work. They are called "trainees" or "learners." If accepted as such, a trainee is turned over to a yard crew for practical instruction, which is given by affording an opportunity for observation of the routine activities and gradually permitting him to do the actual work under supervision. This is of no immediate advantage to the Railroad however, as the trainee does not displace any member of the regular crew at the time. Rather, it is a disadvantage, because a novice undertakes the work to get experience while a trainman stands by watching him, and the operation is apt to be impeded rather than expedited. If the trainee finishes training and is certified as fit for a position as trainman his name goes "on the board," as ready for work, and he receives an allowance of $4 a day for his training period based on an eight-hour day. If he does not finish training or is not certified as competent he receives nothing. Thus the Railroad obtains a pool of qualified workmen to draw upon and the worker is in line for a job.

Inexperienced applicants for employment are informed before entering upon the training period that they will receive the allowance only if they "stay and go to work". That is, if they complete the training period and are certified as qualified for employment.

The length of the training period, if completed, depends upon the aptitude of the learner for the work, the average being seven or eight days. When the applicant files his written application for employment he states: "It is agreed by me to serve for at least two weeks under the instructions of a conductor for the purpose of learning the duties and qualifying for such position, employment to be subject of (sic) passing required examinations on the operating rules, the working rules and regulations as from time to time applied, and the approval of the designated officer."

The learners are not required to serve the whole two weeks if they can qualify sooner. As a matter of practice the period of training depends upon the capacity and aptitude of the individual trainee.

While training, the learner is expected to be present with the crew to which he has been assigned during working hours, but he is not subject to the rules or discipline applicable to an employee and is not considered such.

Prior to October 1, 1943, the persons in training received no allowance, regardless of whether they were accepted for employment; serving without compensation for the purpose of learning the business.

On October 1, 1943, the defendant and the Brotherhood of Railroad Trainmen changed the previous custom by a letter directed to the Chairman of the Brotherhood of Railroad Trainmen reading as follows:

"Effective October 1, 1943 and for the duration of the present Emergency, Student Brakemen, Road or Yard, will be made an allowance of $4.00 per day, for each calendar day, with a maximum number of ten days, irrespective of the hours devoted or the miles made on any day, the Student to devote not less than eight (8) hours each day to the service.

"Payment to be made if and when the Student has qualified, is accepted for and takes employment.

"If this arrangement meets with your approval, will you please so acknowledge on the second copy of this letter, which is attached."

There is no evidence as to what the practice regarding compensation will be at the end of the war. The defendant appears to be under no obligation by virtue of any agreement to continue it beyond that point.

Other than above mentioned the defendant does not pay learners the minimum wage provided by Sec. 6 of the Act nor does it maintain records of the kind required by Sec. 11(c) covering the trainees.

## Conclusion of Law

For the purpose of decision it may be assumed that after the war defendant will revert to its former practice of paying trainees nothing for the training period and that it will continue as at present to pay nothing to those who do not complete the training.

On the issue presented the facts in the case do not differ in any material respect from those set forth in Walling v. Jack-

sonville Terminal Co., 55 F.Supp. 302, affirmed on appeal by the Circuit Court of appeals in the Fifth Circuit April 23, 1945, 148 F.2d 768, and I follow that case and the reasoning of both courts in concluding that the trainee is not an employee under the commonly accepted meaning of the term nor as the term is used in the Act, it not being its purpose to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law.

I see no object in repeating or paraphrasing the reasoning in the above case, nor in Walling v. Nashville, C. & St. L. Ry., 60 F.Supp. 1004, decided the same way by the district court in the middle district of Tennessee; but, finding no violation of law and no reason to apprehend any, I conclude that the bill should be dismissed. Judgment will be entered accordingly.